# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHMAN BROTHERS HOLDINGS, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 11-6089 |
| v. | : | |
| | : | |
| GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P., | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

October 22, 2015                                                                 ANITA B. BRODY, J.

Plaintiff Lehman Brothers Holdings, Inc. ("Lehman") sued Defendant Gateway Funding

Diversified Mortgage Services, L.P. ("Gateway") for breach of a contract related to Lehman's

purchase of four loans from Gateway's predecessor, Arlington Capital Mortgage Corporation

("Arlington"). I held that Arlington had breached its contractual obligations with respect to all

but one of the loans, and that Gateway was liable for the loans that were breached under the *de

facto* merger doctrine. *See* ECF Nos. 46, 92. Gateway appealed my ruling, and, on May 7, 2015,

the Third Circuit affirmed.

On December 31, 2013, Lehman had filed a motion to award attorneys' fees and to fix

prejudgment interest pursuant to Federal Rule of Civil Procedure 54. *See* ECF No. 94. On June 8,

2015, Lehman filed an application for an award of attorneys' fees for the appeal. *See* ECF No.

1

114. On July 21, 2015, the Third Circuit remanded Lehman's application for me to decide.

Lehman now moves for an award of these fees.

I.    **BACKGROUND**[1]

In August 2001, Arlington and Lehman entered into a Loan Purchase Agreement

("LPA"), under which Lehman purchased four mortgage loans from Arlington. The LPA

incorporated a Seller's Guide that provided various representations, warranties, and covenants.

In 2007, Arlington acknowledged misrepresentations in three of the four loans. Arlington

entered into an Indemnification Agreement with Lehman in which it agreed to indemnify

Lehman for any losses suffered on these three loans. Arlington never paid Lehman on the

Indemnification Agreement. Lehman claimed that a fourth loan (the "McNair Loan") also

contained misrepresentations, although Arlington never admitted any such misstatements. In

2008, Arlington sold most of its assets to Gateway.

On September 28, 2011, Lehman sued Gateway, claiming that it was liable for

Arlington's breach of the LPA and the Indemnification Agreement. On January 31, 2013,

Lehman moved for summary judgment. On April 25, 2013, I found that there was no dispute as

to whether Arlington breached the Indemnification Agreement with respect to three of the four

loans. *See* ECF No. 46, at 20. But questions of fact remained as to whether the McNair Loan had

been breached. There were also genuine issues of material fact regarding whether Gateway was

liable for these breaches under the *de facto* merger doctrine. *See id.* at 17-19. After a bench trial

on August 21 and 22, 2013, I held that Gateway had entered into a *de facto* merger with

Arlington, and was therefore liable for Arlington's contractual breaches. I also held that

Arlington had not breached its contractual obligations with respect to the McNair Loan. Gateway

---

[1] Unless otherwise stated, the facts are taken from my Findings of Fact and Conclusions of Law. *See* ECF
No. 89.

appealed, and on May 7, 2015, the Third Circuit affirmed the ruling. *See Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Servs., L.P.*, 785 F.3d 96 (3d Cir. 2015).

Lehman now seeks $150,056.22 in attorneys' fees and $15,694.95 in expenses for the district court litigation. *See* ECF No. 94 at 7, 9. It also requests $154,408.00 in attorneys' fees and $15,672.69 in expenses for the appeal. *See* ECF No. 114, at 9-10. Gateway challenges both the timeliness and the reasonableness of Lehman's requests. As explained below, I will award $109,505.60 in attorneys' fees for the district court litigation and $121,017 in attorneys' fees for the appeal. I will deny Lehman's requests for reimbursement of expenses for both the district court and appellate litigation.

## II.    DISCUSSION

### a.   Fees for the District Court Litigation

#### i.   *Applicable Law*

Lehman seeks attorneys' fees under a clause of the Seller's Guide,[2] which provides that:

> In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation . . . .

Seller's Guide at 21.[3]

The Third Circuit has held that "for *Erie* purposes, a party's asserted right to attorneys' fees is a matter of substantive state law." *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008). Thus, contractual agreements for attorneys' fees such as that contained in the Seller's Guide are

---

[2] Although most of Lehman's claims arose under the Indemnification Agreement, that agreement specifically provides that it does not "limit [the] exercise of any . . . right provided to [Lehman] by the Seller's Guide" and should not "be construed as a waiver of any rights or remedies that [Lehman] . . . may have . . . under the Purchase Agreement." *See* ECF No. 36, Ex. J. In any event, Gateway does not contest the applicability of the Seller's Guide's attorneys' fees provision.

[3] A copy of the Seller's Guide can be found at Exhibit B to the Declaration of Matthew Spohn, in ECF No. 94.

enforceable "if the contract is valid under applicable state law." *Dunkin' Donuts Inc. v. Guang Chyi Liu*, Nos. 99-3344, 00-3666, 2002 WL 31375509, at *3 (E.D. Pa. Oct 17, 2002). State law "also controls the method of calculating the size of the award." *Blanchette v. Cataldo*, 734 F.2d 869, 878 (1st Cir. 1984); *see also Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995) ("The method of calculating a fee is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state.").

The Seller's Guide provides that it "shall be construed in accordance with the substantive law of the State of New York." Seller's Guide at 21. Because contractual provisions governing attorneys' fees are valid under New York law, the Seller's Guide attorneys' fees clause is enforceable. *See Devon Robotics, LLC v. ITOCHU Int'l, Inc.*, Nos. 09-1819, 09-4123, 2013 WL 5525093, at *3 (E.D. Pa. Oct. 4, 2013) (collecting New York state court cases). New York courts use the lodestar method to calculate contractual attorneys' fees: they "multiply the hours reasonably spent by counsel, as determined by the [c]ourt, by the reasonable hourly rate." *Id.* at *3 & n.8; *see Matakov v. Kel-Tech Const., Inc.*, 924 N.Y.S.2d 344, 346 (N.Y. App. Div. 2011) (upholding the application of the lodestar method to calculate class counsel's fee pursuant to a settlement agreement); *see also GFI Secs., LLC v. Levin*, No. 102411/08, 2009 WL 1575183, at *5 (N.Y. Sup. Ct. 2009). The court may then adjust the lodestar amount based on various case-specific factors, including "the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, and the results achieved." *Bankers Fed. Sav. Bank FSB v. Off W. Broadway Developers*, 638 N.Y.S.2d 72, 74 (N.Y. App. Div. 1996) (internal quotation marks omitted).

ii. *Timeliness of Lehman's Motion*

Gateway argues that Lehman's request for attorneys' fees is untimely because attorneys' fees based on contractual agreements must be raised during trial, and cannot be sought through a post-trial motion under Federal Rule of Civil Procedure 54.

Rule 54 requires that a claim for attorneys' fees "be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). As noted above, the Seller's Guide is governed by New York substantive law. *See Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1037 (5th Cir. 2014) (applying Texas law to determine whether, under Rule 54(d)(2)(A), contractual attorneys' fees must be proven as an element of damages). New York courts do not require that attorneys' fees be proven as an element of damages. *See Elkins v. Cinera Realty, Inc.*, 402 N.Y.S.2d 432, 433 (N.Y. App. Div. 1978) (stating that the determination of attorneys' fees could only be made once the "ultimate outcome of the controversy, whether or not such outcome is on the merits," was known); *see also Gamache v. Steinhaus*, 776 N.Y.S.2d 310, 312 (N.Y. App. Div. 2004) (emphasizing that a party was "clear[ly] . . . entitled to an attorney's fee," even though the issue was raised in a post-trial motion); *737 Park Ave. Acquisition, LLC v. Jetter*, 997 N.Y.S.2d 101 (N.Y. Civ. Ct. 2014) (involving a post-trial hearing on an application for attorneys' fees). Thus, New York law does not require Lehman to prove its attorneys' fees claim at trial, and Lehman's request for attorneys' fees is timely.[4]

---

[4] Rule 54 itself does not preclude a post-trial motion for attorneys' fees. Although the Advisory Committee Notes state that the rule "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract," Fed. R. Civ. P. 54 advisory cmte. note (1993), several circuit courts have interpreted this language to permit a claim for contractual attorneys' fees to be pursued in a Rule 54 motion. *See Richardson*, 740 F.3d at 1039-40; *Rissman v. Rissman*, 229 F.3d 586, 587-88 (7th Cir. 2000); *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000) (per curiam). As the Seventh Circuit has explained, "a party seeking legal fees among the items of damages—for example, fees that were incurred by the plaintiff before the litigation begins—. . . must raise its claim in time for submission to the trier of fact." *Rissman*, 229 F.3d at 588. In contrast, "[f]ees for work done during the case should be sought after decision, when the prevailing party has been identified and it is

### iii.   Hourly Rate

Under the lodestar method, the reasonableness of Lehman's requested attorneys' fees turns on an assessment of the hourly rates charged by Lehman's counsel and the number of hours spent by counsel on the litigation. To determine the appropriateness of counsel's hourly rate, a court must consider the "customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented." *Gamache v. Steinhaus*, 776 N.Y.S.2d 310, 311 (N.Y. App. Div. 2004) (internal quotation marks omitted); *accord Rahmey v. Blum*, 95 A.D.2d 294, 302 (N.Y. App. Div. 1983).

Attorney Matthew Spohn, who charged an hourly rate of $385 in 2012 and $395 in 2013, billed the majority of the time spent on the district court litigation. *See* ECF No. 94, Spohn Decl., at 3. In addition, attorney Caleb Durling billed significant hours on this case; he charged an hourly rate of $340 in 2012 and $375 in 2013. *See id.*, Durling Decl., at 2. Local counsel, Thomas Donnelly, billed $250 per hour over the relevant time period. *See id.*, Donnelly Decl., at 2.[5] To support the reasonableness of these hourly rates, Lehman's counsel submitted the affidavit of Peter Smith, a Philadelphia attorney who attested that the rates charged by Lehman's counsel were "in line with the prevailing market rates in Philadelphia and nationally" given the attorneys' background and experience. *Id.*, Smith Decl., at 2-3.

Gateway argues that the rates charged by Mr. Spohn and Mr. Durling are excessive because local counsel, Mr. Donnelly, has more experience but charged only $250 per hour. Gateway's position is unpersuasive. Mr. Spohn has been practicing law for two years longer than

---

possible to quantify the award." *Id.* Courts in this district have also allowed parties to pursue contractual attorneys' fees claims through Rule 54 motions. *See, e.g.*, *Telecom S. Am., Inc. v. Presto Telecommc'ns, Inc.*, No. 01-680, 2003 WL 22462236, at *3 (E.D. Pa. Oct. 28, 2003).

[5] Lehman's counsel also billed for work done by other associates and paralegals. *See* ECF No. 94, Smith Decl., at 2-3. However, Gateway does not dispute the rates charged by these individuals, and they are reasonable.

Mr. Donnelly. *Compare* ECF No. 94, Spohn Decl., at 2 (indicating that Mr. Spohn graduated law

school in 2001) *with id.*, Donnelly Decl., at 2 (stating that Mr. Donnelly graduated in 2003). Both

Mr. Spohn and Mr. Durling also graduated from law school with honors and obtained judicial

clerkships. *See id.*, Spohn Decl., at 2; *id.*, Durling Decl., at 2. Mr. Durling has been recognized

for his work in industry publications, and served as "national coordination counsel for

[Lehmnan's] litigation across the country." *Id.*, Durling Decl., at 2. In short, Mr. Spohn and Mr.

Durling's skill and experience justify the higher hourly rates they charged; their rates are

reasonable.[6]

In one respect, however, the rate charged by Mr. Spohn is excessive. Mr. Spohn spent

12.4 hours traveling to Philadelphia and back for a pretrial conference between July 31 and

August 1, 2013. He typically charged half his hourly rate (or $197.50) while traveling, a practice

that seems reasonable. *See Gonzalez v. Bustleton Servs., Inc.*, No. 08-4703, 2010 WL 3282623,

at *3 (E.D. Pa. Aug. 18, 2010); *RMP Capital, Corp. v. Victory Jet, LLC*, No. 6197-12, 2013 WL

5303582, at *12 (N.Y. Sup. Ct. 2013). But for this particular trip, he only billed 6.3 hours at this

reduced rate. *See* ECF No. 94, Spohn Decl., Ex. A. The remaining 6.1 hours were improperly

billed at his full hourly rate of $395. *Id.* I will therefore reduce Lehman's attorneys' fees award

by $1,204.75[7] to account for this excessive charge for travel time.

        *iv.   Number of Hours*

---

[6] Gateway claims that it is "lawfully entitled" to a hearing on the reasonableness of Lehman's rates, ECF No. 96, at 3. But New York courts have held that a hearing is not necessary as long as the court possesses "sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." *SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 825 N.Y.S.2d 80, 82 (N.Y. App. Div. 2006). While a "hearing is required with respect to issues of fact raised in opposing affidavits," *Bankers Fed. Sav. Bank*, 638 N.Y.S.2d at 72, Gateway has not submitted any affidavit or contrary evidence that would justify holding a hearing on the reasonableness of Lehman's counsel's hourly rate. *See Podhorecki v. Lauer's Furniture Stores, Inc.*, 607 N.Y.S.2d 818, 819 (N.Y. App. Div. 1994) (upholding lower court's decision to resolve fee award "based upon the affidavits and documents submitted by plaintiffs without conducting a hearing").

[7] This figure is reached by multiplying the 6.1 hours by the difference between $395 and $197.50.

The reasonableness of the number of hours spent on the litigation "turns upon . . . the type of work done, the specificity of counsel's time records, the competence and necessity of the services performed, and the results achieved." *Katzer v. Cty. of Rensselaer*, 767 N.Y.S.2d 474, 476 (N.Y. App. Div. 2003). Over the course of the district court litigation, Lehman's counsel billed 484 hours. *See* ECF No. 94, at 7. To justify these hours, Lehman has submitted contemporaneous records indicating the date, the number of hours billed, the attorney billing those hours, and the tasks performed during those hours. *See Rahmey*, 95 A.D.2d at 300 (stating that a court should look to "contemporaneous time sheet[s] indicating the date, number of hours worked, an explanation of how the hours were spent . . . and identifying the specific claim to which the hours pertain"); *see also Gamache*, 776 N.Y.S.2d at 312 (concluding that the attorneys had failed to establish the reasonableness of the hours spent where they did not submit contemporaneous time sheets).

Gateway has submitted a list of various billing entries that it claims are either duplicative or erroneous. *See* ECF No. 96, Ex. A. Based on my independent review of Lehman's billing records, I conclude that they are largely reasonable given the type and complexity of the work involved. However, the 23.2 hours spent by counsel on drafting a post-trial supplemental brief were excessive. *See* ECF No. 94, Spohn Decl., Ex. A. This brief did not require new legal research; many of the citations and legal arguments are identical to those contained in Lehman's summary-judgment brief. *Compare* ECF No. 87 *with* ECF No. 33. Instead, the additional work that went into producing this brief consisted of reviewing the 433 page trial transcript and drafting 12 pages of legal argument. The brief could have reasonably been prepared in 16 hours—6 hours to review the transcript and 10 hours for drafting. *See Decarmen v. Comm'r of Social Sec.*, No. 09-427, 2015 WL 5286620, at *7 (W.D. Pa. Sept. 8, 2015) (finding "nothing

unreasonable in the expenditure of 6 hours to review the 460-page transcript in th[e] case");

*Seifert v. Comm'r of Social Sec.*, No. 10-188J, 2013 WL 357568, at *3 (W.D. Pa. Jan. 29, 2013)

(reducing time spent on a 32 page brief to 25 hours where the issues raised were familiar to

counsel). I will reduce the requested hours for preparing the post-trial supplemental brief from

23.2 to 16 hours. This equates to a reduction in the fee award of $2,844.[8]

> v. *Adjustment for Limited Success*

Gateway contends that Lehman's attorneys' fees should be reduced by 25% because it

did not prevail on its claim that Arlington made misrepresentations regarding the McNair Loan.

*See* ECF No. 96, at 6-7. Under New York law, a court must account for several factors in

determining the "reasonable value of the services rendered" by an attorney, including "the

amount involved and benefit resulting to the client from the services . . . [and] the results

obtained." *Diaz v. Audi of Am., Inc.*, 57 A.D.3d 828, 830 (N.Y. App. Div. 2008); *see also Matter*

*of Freeman*, 311 N.E.2d 480, 484 (N.Y. 1974).

In this case, Lehman sought damages for losses on four different loans. Gateway

essentially conceded that Arlington breached its contractual obligations with respect to three of

the loans. *See* ECF No. 46, at 20. Lehman succeeded in proving that Gateway was liable for the

losses on these three loans under the *de facto* merger doctrine. Lehman failed, however, to

demonstrate that Arlington itself had violated its agreement with respect to the McNair Loan.

Ultimately, Lehman obtained monetary recovery for the losses suffered on three of the four loans.

Thus, a 25% reduction in the fee award will align Lehman's attorneys' fees with the results its

counsel obtained, and I will therefore reduce the fee award by $36,501.87.[9] *See, e.g.*, *RMP*

---

[8] This figure is reached by multiplying the difference between 23.2 and 16 by Mr. Spohn's hourly rate of $395.
[9] This figure is 25% of $146,007.47—Lehman's adjusted lodestar amount after reductions for improperly billed travel and excessive time spent on the post-trial brief.

*Capital, Corp.*, 2013 WL 5303582, at *11 (noting that where "the issue of damages only produced partial success," "the award of fees should be reasonable in relation to the results obtained"); *GFI Secs., LLC*, 2009 WL 1575183, at *8 (upholding an arbitrator's decision to reduce attorneys' fees by two-thirds where the party only prevailed on one of its three claims).

      *vi.   Reimbursement for Expenses*

Lehman also seeks to recover $15,694.95 for legal research[10] and travel expenses[11] incurred during the course of the litigation. *See* ECF No. 94, at 9. New York courts treat research and travel expenses as part of an attorney's base fee, and do not award reimbursement for these types of expenses. *See In re City of New York*, 913 N.Y.S.2d 512, 527 (N.Y. Sup. Ct. 2010) (stating that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorney's fees and is not a separately taxable cost" and declining to award reimbursement for travel expenses since "it is presumed that all of the services needed could have been provided by retaining" local counsel (internal quotation marks omitted)); *Cox v. Microsoft Corp.*, No. 105193/2000, 2007 WL 7045224, at *4 (N.Y. Sup. Ct. 2007) (treating Westlaw and Lexis research as "overhead" that "is not compensable as an expense"); *Meyers v. State*, 634 N.Y.S.2d 642, 646 n.2 (N.Y. Ct. Cl. 1995) (finding that travel expenses and computerized legal research costs "seemingly fall within the attorneys' base fee").[12]

As such, I will decline to award Lehman the $15,694.95 in expenses it seeks.

      *vii.   Summary*

After reducing the requested fee award of $150,056.22 by $1,204.75 for improperly-billed travel time, and $2,844 for the hours unreasonably spent on the post-trial supplemental

---

[10] These expenses are related to the costs of using the Westlaw and Lexis electronic databases.

[11] In addition to billing at half-rate for the hours spent traveling, counsel also charged for the expenses for Lehman's Denver-based attorneys to travel to Philadelphia, including airfare and hotels.

[12] Lehman does not point to any New York caselaw to the contrary, and no such authority has been located.

brief, Lehman's lodestar amount is $146,007.47. Because of Lehman's limited success in the

district court litigation, this amount will be reduced by 25%. Thus, Lehman is entitled to a

reasonable fee award of $109,505.60. Lehman cannot recover for the travel and research costs

incurred by counsel.

> b.   Fees for Appeal

Lehman also seeks $154,408.00 in attorneys' fees and $15,672.69 in expenses for its

successful defense of Gateway's appeal. *See* ECF No. 114, at 9-10. It argues that it is entitled to

these fees and expenses either under Federal Rule of Appellate Procedure 38, which authorizes

courts of appeals to award damages and costs for frivolous appeals, or the Seller's Guide. I will

award Lehman $121,017 in reasonable attorneys' fees under the Seller's Guide and will deny its

request to be reimbursed for expenses incurred in using online legal research services.[13]

> i.   *Fees & Expenses Under Rule 38*

Lehman claims that it is entitled to attorneys' fees and expenses under Federal Rule of

Appellate Procedure 38, which states that "[i]f a court of appeals determines that an appeal is

frivolous, it may . . . award just damages and single or double costs to the appellee." Fed. R. App.

P. 38.[14] Although, by its terms, Rule 38 refers to courts of appeals and not district courts, *see*

*Rossi v. Proctor & Gamble Co.*, No. 11-7238, 2014 WL 1050658, at *3 (D.N.J. Mar. 17, 2014),

the Third Circuit's mandate in this case directs me to "consider the [appellate attorneys' fees]

---

[13] Gateway initially raises the same timeliness challenge to Lehman's application for contractual attorneys' fees on appeal—namely, that this claim should have been pursued at trial. As discussed above, New York law does not require attorneys' fees to be proved at trial. It would be strange indeed to require Lehman to prove attorneys' fees for a possible appeal during a trial on its substantive claims.

[14] The Federal Rules of Appellate Procedure apply in diversity cases. *See Hanna v. Plumer*, 380 U.S. 460, 472 (1965) ("*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules."); *see also Burlington N. R. Co. v. Woods*, 480 U.S. 1, 8 (1987) (finding that Rule 38 "can reasonably be classified as procedural," and thus governed where there was a conflict with a state procedural rule).

application and any objections thereto," to determine whether Lehman "is entitled to fees and

expenses," and to "award what [I] consider[] reasonable and proper." Order, No. 14-1119 (3d

Cir., filed July 21, 2015). The Third Circuit's mandate thus obliges me to address Lehman's

argument that Gateway's appeal was frivolous.

In order to award attorneys' fees based on the frivolousness of the appeal, the issues

raised must be so meritless that, "following a thorough analysis of the record and careful

research of the law, a reasonable attorney would conclude that the appeal is frivolous." *Quiroga*

*v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) (internal quotation marks omitted). That is, a

court asks whether the appeal is "wholly without merit." *Id.* at 347; *see also Hilmon Co. (V.I.)*

*Inc. v. Hyatt Int'l*, 899 F.2d 250, 251 (3d Cir. 1990) (stating that a frivolous appeal is one that is

"utterly without merit, or without colorable arguments raised in support" (citation omitted)

(internal quotation marks omitted)).

The Third Circuit chastised Gateway for violating Federal Rule of Appellate Procedure

10 by failing to include in the appellate record the transcript of a hearing. This transcript, the

Court of Appeals noted, was "necessary to evaluate [Gateway's] principal claim" that I had

improperly deemed one of its arguments waived. *Lehman Bros. Holdings, Inc.*, 785 F.3d at 101.

The Court of Appeals found that Gateway's conduct "at best show[ed] a remarkable lack of

diligence and at worst indicate[d] an intent to deceive th[e] Court." *Id.* The Third Circuit then

went on to address three other arguments raised by Gateway related to (1) my denial of a

continuance to obtain expert witnesses; (2) my denial of Gateway's motion to consolidate

Lehman's case against Gateway with Gateway's separate action against Arlington for

contribution and indemnification; and (3) my finding that a *de facto* merger had occurred.

Ultimately, the court found these contentions to be "unpersuasive." *Id.* at 102.

The Third Circuit's strong language and its willingness to find Gateway's primary claim forfeited suggest that at least one of Gateway's arguments was potentially frivolous. But in order for the appeal to be frivolous, Rule 38 requires that it be "*wholly* without merit." *Quiroga*, 943 F.2d at 347 (emphasis added). While Lehman argues that "Gateway had no appreciable hope of securing reversal" on its three other challenges, *see* ECF No. 114, at 16, Lehman has not demonstrated that these challenges meet the difficult standard for frivolousness under Rule 38. *See Hilmon*, 899 F.2d at 253 (cautioning that courts should be reluctant to classify an appeal as frivolous "so that novel theories will not be chilled and litigants advancing any claim or defense which has colorable support . . . will not be deterred").

Although Gateway's arguments on appeal failed to persuade the Third Circuit, there were colorable bases to support at least some of its claims. For example, with respect to my denial of its motion to consolidate, Gateway pointed out that the two actions involved questions of fact that centered on the same series of transactions and occurrences. *See* Fed. R. Civ. P. 42(a) (noting that a court may consolidate actions that "involve common questions of law or fact"). Gateway also challenged my conclusion that Lehman had established continuity of ownership under the *de facto* merger doctrine. Given that continuity of ownership is one of the required elements of a *de facto* merger, *see Fizzano Bros. Concrete Prods, Inc. v. XLN, Inc.*, 42 A.3d 951, 956 (Pa. 2012), Gateway's argument was not so utterly without merit to be frivolous.

In sum, because a reasonable attorney might conceivably have expected to prevail on at least some of the arguments raised in Gateway's appeal, it was not "wholly without merit," and Lehman is not entitled to attorneys' fees and expenses under Rule 38.

> ii. *Fees & Expenses Under the Seller's Guide*

Even though Gateway's appeal was not frivolous, Lehman may still recover attorneys' fees under the Seller's Guide, as interpreted in accordance with New York law.[15]

### 1. The Hourly Rate

Three attorneys billed significant hours on the appeal. Jonathan Franklin, a partner, billed $865 per hour in 2014 and $900 per hour in 2015. *See* ECF No. 114, at 8. Mr. Spohn, who also worked on the district court litigation, billed $415 per hour in 2014 and $500 per hour in 2015. *See id.* Finally, Benjamin Hayes, an associate, billed at an hourly rate of $280 in 2014 and $295 in 2015. *See id.* To support the reasonableness of these rates, Lehman submitted the affidavit of Barry E. Cohen, an attorney in Washington, D.C. with extensive experience in fee-setting and billing practices.

Mr. Cohen's affidavit is not particularly helpful, however, because he only attests that Lehman's counsel's hourly rates were "within the range of hourly rates charged by other lawyers of comparable skill and experience *in the Washington, D.C. market*." *Id.*, Cohen Decl., at 6 (emphasis added). But New York courts have held that the relevant community for calculating the hourly rate is the district where the action is litigated—which, in this case, is Philadelphia. *See, e.g.*, *RMP Capital, Corp.*, 2013 WL 5303582, at *8; *Francis v. Atlantic Infiniti, Ltd.*, No. 19953/06, 2012 WL 398769, at *5 (N.Y. Sup. Ct. 2012); *Daimlerchrysler Corp. v. Karman*, 782 N.Y.S.2d 343, 346 (N.Y. Sup. Ct. 2004); *see also Behavior Research Inst. v. Ambach*, 535 N.Y.S.2d 465, 467 (N.Y. App. Div. 1988) (upholding a lower court judge's determination of hourly rates based on his knowledge of the local community where the case was litigated).

---

[15] The court of appeals would also look to state law, as interpreted by state courts, in order to interpret the attorneys' fees provision of the Seller's Guide. *See Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996) ("In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court . . . .").

Because Lehman has submitted no evidence regarding prevailing market rates in Philadelphia in 2014 and 2015, I will utilize the fee schedule rates established by Community Legal Services, Inc. ("CLS"). *See Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001) (approving the use of the CLS schedule to fix hourly rates).[16] With respect to Mr. Franklin, the applicable range is $600-650.[17] For Mr. Spohn, who has approximately 15 years of legal experience, the CLS range is $350-420. Finally, for Mr. Hayes, who graduated law school in 2014, the relevant CLS range is $180-200. Using these benchmark rates, and accounting for each lawyer's professional reputation and accomplishments, I determine that the reasonable hourly rates are: $650 for Mr. Franklin; $420 for Mr. Spohn, and $200 for Mr. Hayes. Lehman's attorneys' fees award will therefore be adjusted accordingly.

## 2.   Number of Hours

Lehman's counsel billed 342.9 hours for the appeal: 78.1 hours for Mr. Franklin, 77.6 hours for Mr. Spohn, and 188.3 hours for Mr. Hayes. *See* ECF No. 114, at 9. Gateway contends that these hours are excessive, but it has not identified which hours it is challenging and why it believes counsel's billing to be unreasonable. Instead, it merely requests a hearing on reasonableness. Without any evidence to undermine Lehman's billing records, a hearing on the appellate fees motion is not justified. *See SO/Bluestar, LLC*, 825 N.Y.S.2d at 82; *Podhorecki*, 607 N.Y.S.2d at 819.

Based on my review of the billing records submitted to support Lehman's appellate fee petition, I find that 342.9 hours is reasonable in order to research and draft the 47 pages of legal

---

[16] *See Attorney Fees*, Community Legal Services (effective Sept. 12, 2014), http://clsphila.org/about-cls/attorney-fees.

[17] Even though Mr. Franklin had been in the legal profession for 25 years at the time of the appeal, for which the relevant CLS range is $520-590, his skill and accomplishments justify a higher hourly rate. Notably, Mr. Franklin clerked on the Third Circuit, has argued numerous cases before the Supreme Court and the courts of appeals, and is the head of the appellate division of Norton Rose Fulbright LLP. *See* ECF No. 114, Spohn Decl., at 2-3.

argument in the appellate brief, produce a supplemental appendix, and prepare for oral argument (even though oral argument was ultimately not held in the case).[18] Notably, a relatively new associate billed the lion's share of these hours, and courts in this district have found that "hours of consultations and research, which would be considered excessive for an experienced attorney," may be more reasonable for an attorney with limited experience. *Laura P. v. Haverford Sch. Dist.*, No. 07-5395, 2009 WL 1651286, at \*7 (E.D. Pa. June 12, 2009).

### 3. Reimbursement for Expenses

Lehman seeks reimbursement of $15,672.69, primarily for online research expenses. *See* ECF No. 114, at 9-10. As noted above, however, New York courts treat research expenses as part of an attorney's base fee, and do not permit separate recovery for these expenses. *See In re City of New York*, 913 N.Y.S.2d at 527; *Cox*, 2007 WL 7045224, at \*4; *Meyers*, 634 N.Y.S.2d at 646 n.2.

#### iii.  Summary

In sum, Gateway's appeal is not frivolous under Federal Rule of Appellate Procedure 38 because at least some of the issues raised were supported by a colorable legal or factual basis. Nevertheless, Lehman is still entitled to reasonable attorneys' fees of $121,017 under the Seller's Guide.[19] Because counsel was entirely successful on appeal, awarding this full amount accords with the benefit to Lehman. But, as with its district court expenses, Lehman cannot recover for the costs of online research related to the appeal under the Seller's Guide.

#### c.  Prejudgment Interest

---

[18] Some of the hours for which Lehman seeks reimbursement were spent preparing the attorneys' fees application. Arguably, the Seller's Guide provision requiring payment of "reasonable attorney's fees" may preclude recovery for these expenses. *See 214 Wall Street Assocs., LLC v. Medical Arts-Huntington Realty*, 953 N.Y.S.2d 124, 126 (N.Y. App. Div. 2012). However, Gateway does not raise this legal issue of contract interpretation, and it is therefore waived.

[19] This figure was arrived at by multiplying the hours worked by each attorney by the reasonable hourly rate derived from the CLS schedule.

In entering judgment in favor of Lehman, I held that it was entitled to $448,533.08 plus 6% prejudgment interest. *See* ECF No. 93. In the Third Circuit, "state prejudgment interest rules are to be applied in diversity cases." *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). As I previously determined, the Indemnification Agreement breached by Arlington is governed by Pennsylvania law, and Pennsylvania courts calculate prejudgment interest at 6% per annum from the date that payment was wrongfully withheld. *See* ECF No. 46, at 21; *see also Daset Min. Corp. v. Indus. Fuels Corp.*, 473 A.2d 584, 595 (Pa. Super. 1984).

In this case, prejudgment interest should be calculated starting on June 8, 2011, when the 30-day deadline imposed by the Indemnification Agreement for Gateway to respond to Lehman's demand for payment expired. *See* ECF No. 46, at 19. Final judgment in the case was entered on December 17, 2013. For the 923 days that elapsed between Gateway's wrongful withholding of payment and the entry of final judgment, Lehman is entitled to $68,054.14 in prejudgment interest.

## III.    CONCLUSION

As explained above, I will grant in part and deny in part Lehman's motions for attorneys' fees for the district court litigation and appeal. With respect to the district court motion (ECF No. 94), I will award Lehman reasonable attorneys' fees of $109,505.60, and will deny its request for reimbursement of research and travel expenses. I will also fix prejudgment interest at $68,054.14. With regard to Lehman's appellate attorneys' fees motion (ECF No. 114), I will award Lehman $121,017 in attorneys' fees and deny it reimbursement for research expenses.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

17